IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn

Civil Case No. 06-cv-01366-REB- BNB

CATHOLIC HEALTH INITIATIVES, COLORADO
d/b/a CENTURA HEALTH - ST. THOMAS MORE HOSPITAL,

    Plaintiff,

v.

ROBERT C. GROSS, D.O.,

    Defendant and Third-Party Plaintiff,

v.

MEDICAL EXECUTIVE COMMITTEE OF CATHOLIC HEALTH INITIATIVES
COLORADO d/b/a CENTURA HEALTH-ST. THOMAS MORE HOSPITAL, et al.,

    Third-Party Defendants.

## ORDER GRANTING MOTION FOR AWARD OF ATTORNEY FEES AND COSTS

**Blackburn, J.**

This matter before me is the **Brief in support of Award of Attorney's Fees and Costs** [#307], filed January 3, 2008, by plaintiff, Catholic Health initiatives Colorado d/b/a Centura Health St. Thomas More Hospital (Centura). Defendant, Robert C. Gross, D.O., filed a response [#324], Centura filed a reply [#336], and Dr. Gross filed a surreply [#346]. I construe the brief [#307] as a motion for an award of attorney fees as part of the Centura's breach of contract claim against Dr. Gross. The motion is granted.

### I. JURISDICTION

All of the claims in this case are claims under the law of the state of Colorado. I have diversity jurisdiction over this case under 28 U.S.C. § 1332.

## II.  BACKGROUND

This case originated with a complaint filed by Centura [#19] on October 12, 2006, in which Centrua asserted a claim for breach of contract against defendant, Dr. Robert C. Gross.  Centura alleged that Dr. Gross was indebted to Centura under the terms of a recruitment agreement between Centura and Dr. Gross and under promissory notes related to the agreement.  In April, 2003, Centura and Dr. Gross executed a physician recruitment agreement which provided various incentives for Dr. Gross to practice medicine at a hospital operated by Centura, the St. Thomas More Hospital in Canon City, Colorado.  Dr. Gross practiced at St. Thomas Moore Hospital for a time and then departed.  Centura alleged that Dr. Gross breached the recruitment agreement when he resigned his position at Centura and that Dr. Gross is liable to repay to Centura certain funds advanced by Centura to Dr. Gross, which advances are reflected in promissory notes executed concurrently with the recruitment agreement.

Dr. Gross filed an answer to this claim and asserted two third-party claims against the Medical Executive Committee (MEC) of Catholic Health initiatives Colorado d/b/a Centura Health St. Thomas More Hospital, and against certain individual members of the MEC.  The MEC is the entity authorized by Centrua to oversee medical staff functions, including credentialing and ensuring adherence to the Medical Staff By-Laws.  Dr. Gross's resignation from Centura came after the MEC began an investigation of Dr. Gross's practice at Centura.  Dr. Gross's third-party claims against the MEC and individual members of the MEC concerned actions taken by the MEC in the course of the MEC's investigation of Dr. Gross's practice at Centura.  These third-party claims included a claim for breach of the implied duty of goof faith and fair dealing, and a claim for violation of due process and breach of Medical Staff By-Laws.  The same counsel

2

represented Centura and the third-party defendants – the MEC and individual members of the MEC – against whom Dr. Gross brought third-party claims.

Dr. Gross asserted four counterclaims against Centura. Dr. Gross asserted a counterclaim for breach of the implied duty of goof faith and fair dealing and a counterclaim for violation of due process and breach of the applicable Medical Staff By-Laws. These two claims paralleled Dr. Gross's two claims against the MEC and the individual members of the MEC. In addition, Dr. Gross asserted counterclaims for tortious interference with existing business opportunity and tortious interference with prospective business opportunity. These claims concerned disparaging statements allegedly made by Centura to officials of a hospital where Dr. Gross practiced after he left Centura and statements allegedly made by Centura to the National Practitioner's Databank. The alleged statements in question concerned Dr. Gross's practice at Centura, the MEC's investigation of Dr. Gross, and the circumstances of Dr. Gross's resignation from Centura.

Each of the claims, counterclaims, and third-party claims asserted in this case were resolved in two orders. First, in an order [#297], entered December 13, 2007, I detailed the bases for my conclusions: 1) that Centura is entitled to summary judgment on the issue of liability on its contract claim against Dr. Gross; 2) that the MEC and the individual members of the MEC are entitled to summary judgment on Dr. Gross's third-party claims against them; and 3) that Centura is entitled to summary judgment on Dr. Gross's first, second, and fourth counterclaims. Second, in an order [#335], entered February 12, 2008, I concluded that Centura is immune from suit on the claim asserted by Dr. Gross in his third counterclaim, and, thus, I granted summary judgment in favor of Centura on Dr. Gross's third counterclaim.

One issue must be resolved before judgment may enter in this case. That issue is the amount of attorney fees to which Centura is entitled under the terms of the promissory note referred to as the "Income Guarantee Note," which note was executed by Dr. Gross in favor of Centura. This note is one of the bases of Centura's breach of contract claim against Dr. Gross. In my order [#297], I concluded that Centura is entitled to summary judgment on the issue of liability on its contract claim against Dr. Gross. *Order* [#297], p. 26. I concluded further that "it is undisputed that Centura is owed $145,539.81 under the terms of the recruitment agreement and promissory notes, with interest accruing on that amount at 9.25 percent per annum from the date of Dr. Gross's default." *Id.* I concluded also that "Dr. Gross also is obligated to pay Centura's attorney fees and costs of collection, but these amounts are not established in the record." *Id.* I invited further briefing on the amount of attorney fees due to Centura from Dr. Gross before I entered judgement for a specific amount due to Centura on its contract claim. *Id.* That briefing is complete.

### III. ANALYSIS

The Income Guarantee Note includes the following provision:

> The Maker agrees to pay, to the extent permitted by law, all costs and expenses incurred by Holder in connection with the collection and enforcement of this Note, including, but not limited to, expenses and reasonable attorneys' fees to the extent permitted by applicable law, irrespective of whether any suit or security foreclosure or court proceeding has been commenced.

*Id.*, Exhibit A (Income Guarantee Note). Centura argues that this provision of the Income Guarantee Note entitles Centura to collect from Dr. Gross the attorney fees and costs it incurred in pursuing its claim against Dr. Gross, including the attorney fees and expenses Centura incurred in defending against Dr. Gross's counterclaims and third-

4

party claims in this suit. Dr. Gross argues that Centura is not entitled to recover its legal fees and costs related to its defense of Dr. Gross's counterclaims and third-party claims. Dr. Gross claims also that the attorney fees and costs sought by Centura are unreasonably excessive.

### A. Claims for Which Attorney Fees May Be Awarded

Again, all of the claims in this case are claims brought under the law of the State of Colorado. The law of Colorado governs this dispute about attorney fees. Applying Colorado law, the United States Court of Appeals for the Tenth Circuit has held that an attorney fees provision in a promissory note covers fees incurred in defending against ancillary claims brought in conjunction with an action to collect on the note. **Universal Drilling Co. v. Camay Drilling Co**, 737 F.2d 869, 875 - 876 (10th Cir 1984). In **Universal Drilling**, the plaintiff brought claims of breach of contract and breach of warranty against the defendant. The defendant was the holder of a promissory note that was tied to the contract between the parties. The defendant answered the plaintiff's claims and asserted a counterclaim against the plaintiff to collect under the promissory note. The court concluded the plaintiff's claims against the defendant were ancillary to the defendant's claim for the amount due under the note. **Id**. In this circumstance, the court concluded, the attorney fees incurred by the defendant in defending against the plaintiff's ancillary claims were included in the attorney fee recovery provision of the promissory note. **Id**.

Citing **Universal Drilling**, the Colorado Court of Appeals reached a similar holding in **Husband v. Colorado Mountain Cellars**, 867 P.2d 57, 62 - 63 (Colo.App. 1993). In **Husband**, the plaintiff brought suit on two promissory notes for which the defendant was the maker. The defendant asserted a counterclaim against the plaintiff.

5

The notes included provisions for an award of attorney fees. After the plaintiff was successful at trial, the trial court awarded the plaintiff attorney fees for both the fees incurred by the plaintiff in pursuing the plaintiff's claims under the notes, and the fees incurred by the plaintiff in defending against the defendant's counterclaim:

> [I]f . . . fees are incurred in defending against counterclaims that are grounded upon the same transaction out of which the principal debt arose and are asserted to defeat that debt, in whole or in part, it is not improper to consider these fees as part of the cost of collection of that debt.

*Id*. (citing ***Universal Drilling Co. v. Camay Drilling Co***, 737 F.2d 869, 875 - 876 (10th Cir 1984); ***Taylor v. Continental Supply Co.***, 16 F.2d 578 (8th Cir. 1926)).

In this case, Dr. Gross's counterclaims against Centura and his third-party claims against the MEC and the members of the MEC all are claims grounded on the same transaction and nucleus of operative facts that are the basis of the principal debt, which Centura seeks to collect in this lawsuit. The close tie between Dr. Gross's various claims and Centura's claim against Dr. Gross is clear to anyone familiar with the details of this case. In his answer [#20] to the Second Amended Complaint, Dr. Gross represents:

> Dr. Gross states that he has no obligation to repay the promissory notes or to abide by the terms of the Recruitment Agreement because of the actions by Hospital that made the fulfillment of his obligation impossible, including (a) Hospital's breach of its duty of good faith and fair dealing under the Recruitment Agreement, (b) Hospital's institution of disciplinary actions against Dr. Gross without the benefit of the procedural due process guarantees in the Medical Staff By-Laws, and (c) Hospital's privileges without the benefit of the due process procedural guarantees in the Medical Staff By-laws.

Stated differently, Dr. Gross asserted that he was not obligated to repay the notes because of the circumstances he asserted as the basis for his first and second counterclaims against Centura and his two third-party claims against the MEC and

6

certain individual members of the MEC.  These claims are grounded on the same circumstances on which Centura's claim against Dr. Gross is based.

Dr. Gross's third and fourth counterclaims against Centura were based on statements allegedly made by Centura to another hospital and to the National Practitioner's Databank.  These alleged statements concerned the process undertaken by the MEC concerning Dr. Gross and the circumstances of Dr. Gross's resignation from Centura.  Although slightly removed from the basis of Centura's claim, these counterclaims are grounded generally on the same circumstances on which Centura's claim against Dr. Gross is based: that is, Dr. Gross's recruitment agreement, the MEC's procedures against Dr. Gross, and Centura's alleged statements about those procedures.

In sum, the attorney fees and costs incurred by Centura in defending against Dr. Gross's counterclaims against Centura and in defending against Dr. Gross's third-party claims against the MEC and certain individual members of the MEC, are fees incurred in defending against claims that are grounded on the same transaction out of which the principal debt arose.  As stated explicitly by Dr. Gross in his answer, most of these claims were asserted to defeat that debt, in whole or in part.  Under Colorado law and under the terms of the applicable attorney fees provision in the Income Guarantee Note, Centura is entitled to its reasonable attorney fees and costs incurred in pursuing Centura's claim against Dr. Gross and in defending against Dr. Gross's related counterclaims and third-party claims.

### B.  Reasonableness of Claimed Fees

Any determination of reasonable attorneys fees starts with a calculation of the "lodestar" amount.  **Hensley v. Eckerhart**, 461 U.S. 424, 433 (1983).  The lodestar

7

amount is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433.  The Tenth Circuit Court of Appeals has recognized the lodestar amount as presumptively reasonable.  ***Homeward Bound, Inc. v. Hissom Memorial Ctr.***, 963 F.2d 1352, 1355 (10th Cir. 1992).  A "reasonable rate" is defined as the prevailing market rate in the community in question for an attorney of similar experience.  ***Blum v. Stenson***, 465 U.S. 886, 895 (1984).

I have reviewed carefully the detailed billing records submitted by counsel for Centura, the MEC, and certain individual members of the MEC.  *Brief in Support of Award of Attorney's Fees and Costs* [#307], Affidavit of Mark L. Sabey.  I find that the number of hours spent on this litigation by counsel for Centura, the MEC, and certain individual members of the MEC, is reasonable.  The hourly rates reflected in the detailed exhibit attached to Mr. Sabey's affidavit are reasonable when considered in the context of the Denver, Colorado, market.  The billing of counsel for Centura, the MEC, and certain individual members of the MEC reflects that a reasonable number of hours was expended on this litigation.  That billing shows a correct multiplication of that number of hours by reasonable hourly rates for those doing the work. In short, the lodestar amount of $290,869.68 proposed by counsel is reasonable.

### C. Conclusion

Centura is entitled to collect from Dr. Gross its reasonable attorney fees and costs incurred in prosecuting Centura's claim against Dr. Gross and in defending against Dr. Gross's counterclaims and third-party claims. Considering all relevant circumstances, the amount of the fees sought by Centura is reasonable.  Therefore, I grant Centura's motion for an award of attorney fees as part of its breach of contract claim.  With the resolution of the issue of attorney fees, all of the claims, counterclaims,

8

and third-party claims asserted in this case are resolved fully. Therefore, I direct that judgment be entered in this case.

### IV. ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1. That Centura's **Brief in support of Award of Attorney's Fees and Costs** [#307], filed January 3, 2008, which I construe to be a motion for an award of attorney fees as part of Centura's breach of contract claim, is **GRANTED**;

2. That based on the conclusions stated in my **Order Concerning Motions for Summary Judgment** [#297], entered December 13, 2007, my **Order Granting Motion to Stay and For Sua-Sponte Reconsideration** [#335], entered February 12, 2008, and in this order, **JUDGMENT SHALL ENTER** as stated in this order;

3. That pursuant to Fed.R.Civ.P, 58, **JUDGMENT SHALL ENTER** for plaintiff, Catholic Health Initiatives, Colorado d/b/a Centura Health - St. Thomas More Hospital (Centura), against the defendant, Dr. Robert C. Gross, D.O. (Dr. Gross), on Centura's breach of contract claim against Dr. Gross;

4. That Centura is **AWARDED** $145,539.81 as recovery for the principal amount due under the terms of the recruitment agreement and promissory notes that are the bases of Centura's breach of contract claim against Dr. Gross, together with interest accruing on that amount at 9.25 percent per annum from the date of Dr. Gross's default under the agreement and promissory notes;

5. That Centura is **AWARDED** reasonable attorney fees in the amount of $290,869.68 as an additional element of the damages due to Centura on its breach of contract claim against Dr. Gross;

6. That **JUDGMENT SHALL ENTER** for Centura against Dr. Gross on each of Dr. Gross's four counterclaims against Centura;

7. That **JUDGMENT SHALL ENTER** for third-party defendant, the Medical Executive Committee of Catholic Health Initiatives Colorado D/b/a Centura Health-St. Thomas More Hospital (MEC), against Dr. Gross on Dr. Gross's third-party claims against the MEC;

8. That **JUDGMENT SHALL ENTER** for third-party defendants, Gary McKinney, M.D., James McGuire, M.D., Erick Carlson, M.D., Gregory Harrigan, M.D., Victoria King, M.D., Robert McCurry, D.O., and Carolyn Rowlands, M.D., against Dr. Gross on Dr. Gross's third-party claims against these third-party defendants; and

9. That the Centura, the MEC, and third-party defendants, Gary McKinney, M.D., James McGuire, M.D., Erick Carlson, M.D., Gregory Harrigan, M.D., Victoria King, M.D., Robert McCurry, D.O., and Carolyn Rowlands, M.D., are **AWARDED** their costs to be taxed by the Clerk of the Court pursuant to F$_{ED.}$ R. C$_{IV.}$ P. 54(d)(1) and D.C.COLO.LCivR 54.1.

Dated May 21, 2008, at Denver, Colorado.

                                         **BY THE COURT:**

                                         <u>s/ Robert E. Blackburn</u>
                                         **Robert E. Blackburn**
                                         **United States District Judge**